IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10-CR-30168-01-MJR |
| | ) |
| JOHN THOMPSON, | ) |
| | ) |
| Defendant. | ) |

**COURT'S MEMORANDUM REGARDING
SENTENCING OF DEFENDANT THOMPSON**

REAGAN, District Judge:

**A.   Introduction**

Two Defendants (John Thompson and Michael Gabre-Kidan) were charged in the above-captioned case with, inter alia, conspiring to distribute MDMA (methylenedioxymethamphetamine), commonly referred to as "ecstasy," a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and § 846. Both entered guilty pleas. Defendant Gabre-Kidan was sentenced on February 1, 2012, with judgment was entered accordingly. Delays were encountered in transferring Defendant Thompson to this District from the Western District of Washington.

Ultimately, in January 2012, Thompson appeared before the undersigned District Judge and pled guilty to one count of conspiracy to distribute MDMA and four counts of distributing MDMA. Counsel thoroughly briefed the substantial issues relative to Thompson's sentencing. At the conclusion of the May 18, 2012 sentencing hearing, the undersigned Judge sentenced Thompson to a 46-month term of

1

imprisonment on each of the five counts (the terms to run concurrently), 3 years of supervised release, a $500 total fine ($100 on each of the five counts), and a $500 special assessment ($100 on each of the five counts).

At the May 18th hearing, the Court orally delineated the reasons supporting the sentence imposed, including consideration of all the factors under 18 U.S.C. § 3553(a). As was noted on the record, criminal prosecutions involving MDMA distribution conspiracies are relatively rare in the experience of the undersigned Judge. This memorandum is submitted to further explain the reasons for the sentence given to Defendant Thompson, particularly the rationale for declining defense counsel's request to declare the applicable Guideline unsound and unworthy of application.

**B.** <u>Analysis</u>

In the case at bar, the central issue briefed by counsel and resolved by the Court was the appropriate marijuana-to-MDMA ratio, i.e., the drug equivalency table found at U.S.S.G. § 2D1.1.[1] Defense counsel assert that the current 500:1 marijuana-to-MDMA guideline ratio is not grounded in empirically sound science, is flawed, and should be rejected by the Court (pushing for a 100:1 ratio instead).

This echoes arguments raised several years ago in crack cocaine cases, culminating in **_Kimbrough v. United States_, 552 U.S. 85 (2007)** and its progeny, which rejected the disparity between crack cocaine sentences and powder cocaine sentences,

---

[1] The cases and briefs refer to the ratio alternatively as MDMA-to-marijuana (which would be 1:500) and marijuana-to-MDMA (which would be 500:1). In this Memorandum, the Court has opted for the latter, except when directly quoting a case.

allowing district courts to vary from the crack cocaine Sentencing Guideline based on policy disagreements. *See, e.g., Spears v. United States*, **555 U.S. 261, 264-66 (2009).**

In the instant case, defense counsel contends that the applicable sentencing guideline is not entitled to the deference generally given to guidelines in the two-step post-*Booker* sentencing process. Deference is not warranted, the argument goes, because the MDMA guideline was not adopted in reliance on the careful thought, extensive research, sound empirical evidence, and expertise typically exercised by the United States Sentencing Commission. Historical perspective aids the Court's analysis of this argument.

Before 2001, the United States Sentencing Guidelines stated that the marijuana-to-MDMA ratio was 35:1. That changed when Congress passed the Ecstasy Anti-Proliferation Act of 2000, Pub. L. No. 106-310, §§ 3663(a), 3664. The Act directed the Sentencing Commission to review and increase penalties for offenses related to manufacturing or trafficking MDMA and to submit a report to Congress containing the resulting amendments. The Commission's report (sometimes referred to as the "Ecstasy Report") concluded that penalties for MDMA offenses should be more severe than penalties for powder cocaine (which has a 200:1 marijuana equivalency) but less severe than penalties for heroin (which has a 1000:1 marijuana equivalency). The Commission concluded that 500:1 was the appropriate marijuana equivalency for MDMA (500 grams of marijuana deemed the equivalent of 1 gram of MDMA).

The Commission reasoned that MDMA is *less* harmful, and should be punished *less* harshly, than heroin because: (1) there are many more heroin cases than MDMA cases in the federal system; (2) heroin is more addictive than MDMA; (3) heroin results in many more emergency room visits and deaths than MDMA due to the fact heroin is usually injected, whereas MDMA is taken orally; (4) heroin has more violence associated with its users and distributors than does MDMA; and (5) heroin, usually injected, causes greater secondary health effects, like the spread of HIV and hepatitis.

The Commission found that MDMA should be treated *more* harshly than powder cocaine because: (1) unlike powder cocaine, MDMA is neurotoxic; (2) powder cocaine is not aggressively marketed to youth in the same manner as MDMA is marketed; and (3) powder cocaine is only a stimulant, whereas MDMA is both a stimulant and a hallucinogenic.

The Report further reveals that the Commission was concerned with choosing penalty levels that targeted serious and high-level traffickers, providing both sufficient deterrence and incentives for cooperation by offenders. The Commission chose five-year sentences for serious traffickers – so-called "local distributors" – those whose conduct involved approximately 800 pills. The Commission imposed ten-year sentences for high-level traffickers – importers, upper- and middle-level distributors whose offense conduct involved approximately 8,000 pills.

To recap, the Sentencing Commission opted to establish a 500:1 marijuana-to-MDMA ratio. That 500:1 ratio was contained in a temporary amendment

to the Sentencing Guidelines that ultimately became permanent and was made retroactively effective as of May 1, 2001. The significantly increased penalties for MDMA offenses were needed, the Commission decided, because of the "unique pharmacological and physiological harm of ecstasy, the fact that the drug is aggressively marketed to and used by youth, and its importation and trafficking patterns." *Report to the Congress: MDMA Drug Offenses – Explanation of Recent Guideline Amendments* **5 (2001).**

In the intervening decade, a growing number of defendants charged with MDMA offenses have challenged the rationale underlying the 2011 amendment that increased the MDMA guideline from a 35:1 ratio to a 500:1 ratio. These defendants (including Defendants in the case sub judice) point out that some of the studies the Commission relied on have been repudiated as bad science. They argue that the Commission erroneously concluded that ecstasy was more harmful than cocaine. Additionally, they contend that cocaine is more likely to lead to hospitalization than MDMA, that cocaine is more addictive than MDMA, and that cocaine trafficking is associated with substantial violence (in contrast to MDMA-related offenses).

Several federal courts have addressed these arguments, reaching differing conclusions. In *United States v. McCarthy,* **2011 WL 1991146 (S.D. N.Y. 2011),** a New York District Court judge adopted a 200:1 marijuana-to-MDMA equivalency in sentencing a defendant for conspiracy to distribute and possession with intent to distribute 37,120 grams of MDMA. The Court conceded that it could not discount the

Commission's findings that MDMA is uniquely marketed to, and prevalent among, the younger population. *McCarthy*, **2011 WL 1991146, \*2.** The Court also emphasized conflicting research studies with equivocal results, noting: "this Court cannot conclude that the Commission's findings on MDMA's neurotoxicity have been so compromised by subsequent research that they are no longer true." *Id.*

Deferring to the Commission's determination (supported by express Congressional findings) that the pre-2001 MDMA Guidelines were too low, the District Judge in *McCarthy* rejected the defendant's proposal to sentence him based on a 1:1 ratio, rejected the alternative idea to use the pre-2001 ratio of 35:1, and chose to employ a 200:1 ratio (the same as cocaine).

In January of this year, another federal district judge in New York wrestled with similar arguments in a case involving conspiracy to distribute MDMA. In *United States v. Qayyem*, **2012 WL 92287 (S.D. N.Y. 2012),** District Judge Kimba M. Wood summarized the scientific studies, recent statistics and related data, noting: "Whether MDMA is in fact neurotoxic remains a matter of debate in the scientific community," but despite the "lack of consensus on the extent to which MDMA may cause brain damage, the weight of the evidence supports the Commission's conclusion that MDMA is neurotoxic." *Qayyem* **at \*4.**

Judge Wood was critical of some of the Commission's findings regarding MDMA (those which "have been weakened by recent research"), but she stressed that aggressive marketing to youth remains a valid countervailing consideration. *Id.* In

heavy reliance on the evidentiary findings in *McCarthy,* the *Qayyem* court reached the same conclusion as *McCarthy* -- that a 200:1 marijuana equivalency ratio was appropriate. Not all federal judges have resolved the issue in this fashion.

The Tenth Circuit Court of Appeals affirmed a district judge's *adherence* to the Guidelines' 500:1 marijuana-to-MDMA equivalency table in sentencing a defendant convicted of conspiracy to distribute MDMA. In **United States v. Ferguson, 2012 WL 29047 (10th Cir. 2012),** the Tenth Circuit explained:

> Mr. Ferguson argues that the district court's application of the 1:500 ratio was unreasonable in light of empirical data suggesting that the ratio is unduly harsh and otherwise lacks justification. However, while Mr. Ferguson is correct that a sentencing judge who disagrees with the policy or harshness of the Guidelines' advisory conversions may deviate from them without necessarily abusing his or her discretion, by no means does it follow that it is an abuse of discretion for a judge to adhere to the equivalency table, policy critiques notwithstanding.
>
> Indeed, "a sentence is not rendered unreasonable merely because of a district court's refusal to deviate from the advisory [G]uideline range based on disagreements with the policies underlying a particular Guideline provision." [Citations omitted.] We therefore find no abuse of discretion in the district court's application of the Guidelines' advisory 1:500 MDMA-to-marijuana conversion ratio in this case.

The *Ferguson* decision referenced an earlier Tenth Circuit case, ***United States v. Alvarez-Bernabe*, 626 F.3d 1161, 1166 (10th Cir. 2010),** for the proposition that a district court is not required to delve into the history of a guideline so it can satisfy itself that the process that produced the guideline was adequate. Nor must a district court engage in independent analysis of the empirical justifications and deliberative

7

undertakings that led to a particular guideline. *Id.* at 1166, *citing United States v. Aguilar-Huerta*, 576 F.3d 365, 368 (7th Cir. 2009), and *United States v. Lopez-Reyes*, 589 F.3d 667, 671 (3rd Cir. 2009).

Just two weeks ago, a federal district court in Tennessee resisted a defendant's invitation to categorically reject the current 500:1 marijuana-to-MDMA ratio of the Guidelines and replace it with a lower ratio. The District Judge found that defendant essentially was asking "the Court to step into the shoes of Congress and the Commission and legislate a change to the drug equivalency table under the Guidelines." *United States v. Kamper*, -- F. Supp. 2d --, 2012 WL 1618296, *3 (E.D. Tenn. May 8, 2012).

> The Court reasoned:
>
> Federal law provides for 677 district court judgeships…. Under Kamper's approach, every single one of these judges could reject the MDMA-to-marijuana ratio under the Guidelines and replace that ratio…. This approach would almost certainly produce the kind of unwarranted sentencing disparities § 3553 attempts to avoid….
>
> A sentence for an MDMA defendant would be based not on the facts and law of each case, but on the ratio employed by the particular sentencing judge, where even different judges in the same courthouse could rely on different ratios….

*Kamper* at *8.

The Court concluded that the authority under *Kimbrough* and *Spears* to reject and adopt a Guideline provision on policy grounds "is best limited to the unique situation at issue in the crack-to-powder ratio cases," and to the extent those cases could be read to confer broader power on sentencing courts, strong institutional reasons

supported the Judge's decision to *not* exercise that power in the case before him. *Id.* The Judge in *Kamper* declared that given the lack of clarity as to the science underlying the MDMA ratio and the uncertainty regarding the sentencing practices of other federal district courts in MDMA cases, and "lacking the Commission's resources to untangle this uncertainty, the Court, even assuming it had the power to legislate" a new ratio, was unwilling to do so. *Id.*

Turning back to the case before this Court, as explained at Defendant Thompson's sentencing hearing May 18, 2012 and described at length in co-Defendant Gabre-Kidan's sentencing hearing in February 2012, the undersigned Judge believes he is vested (beyond the context of cocaine cases) with the discretion to disagree on policy grounds with the advisory Guideline range for a particular sentence and deviate therefrom. But such deviation is not appropriate here.

The undersigned Judge has considerably less experience with MDMA cases than cocaine cases (or for that matter, gun cases or child pornography cases). This relative inexperience does not decrease the Judge's discretion but is relevant in that the Judge may defer more to the Commission in less familiar territory. Moreover, the Court simply is not persuaded by Defendant's arguments that the current MDMA Guideline/ratio is unworthy of application -- across-the-board or in this particular case.

As the Seventh Circuit pointed out in *Aguilar-Huerta,* **576 F.3d at 367-68,** a sentencing judge is free to reject a guideline that is inconsistent with his own penal theories, including a guideline he believes lacks a basis in data or science. However, the

undersigned Judge is not *required* to delve into the history of a guideline or review and assess the deliberative process of the Commission in establishing that guideline in order to properly sentence a defendant. *Id.*

    C.    **Conclusion**

Like the district judge in *Kamper,* the undersigned readily acknowledges that considerable uncertainty exists as to the science and policies underlying the marijuana-to-MDMA ratio. *Kamper* **at \*10.** At some point in the future, there may be an appropriate case in which to consider afresh whether deviation from the MDMA Guideline is merited based on new developments, research, or caselaw. But the case now before the Court does not warrant rejection of the advisory Guideline range based on the policy disagreements and other grounds advanced by counsel herein.

IT IS SO ORDERED.

DATED May 23, 2012.

                                                  s/ ***Michael J. Reagan***
                                                  Michael J. Reagan
                                                  United States District Judge